**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

**No. 98-20347**

---

**SUSAN RHORER, Individually as Independent Executrix**
**of the Estate of James E. Rhorer, as Trustee of the**
**Trusts created under the Last Will of James E. Rhorer,**
**and on behalf of Raytheon Engineers & Constructors, Inc.**
**Basic Life, Optional Life, Accidental Death and**
**Dependent Life Insurance Plan,**

**Plaintiff-Appellant,**

**VERSUS**

**RAYTHEON ENGINEERS AND CONSTRUCTORS, INC.,**
**Basic Life, Optional Life, Accidental Death and**
**Dismemberment, and Dependent Life Insurance Plan;**
**RAYTHEON ENGINEERS & CONSTRUCTORS, INC.,**

**Defendants-Appellees.**

---

Appeal from the United States District Court
for the Southern District of Texas

---

July 15, 1999

Before HIGGINBOTHAM, DUHÉ, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

The plaintiff-appellant, Susan Rhorer ("Rhorer"), appeals the

summary judgment dismissal of her suit to recover life insurance

benefits under an employee benefits plan governed by the Employee

Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001

*et seq.* Rhorer initially filed a claim for benefits with the plan administrator, defendant-appellee, Raytheon Engineers & Constructors ("Raytheon"). Raytheon denied the claim on the ground that her deceased husband had not satisfied a requirement in the policy that required Mr. Rhorer to be actively at work on a full time basis ("the active work requirement"). The main issue in this appeal is whether the district court properly found that there was no triable issue of fact on the question of whether Raytheon abused its discretion in denying her claim. For the following reasons we affirm the district court in part, reverse in part, and remand for further proceedings.

I.

Rhorer's late husband, James E. Rhorer ("Mr. Rhorer"), was the president of Litwin Corporation, an engineering firm, from 1978 until 1995. In May 1995 he was diagnosed with high grade lymphoma and in early July began to work from his home and hospital room.[1] On July 26, Raytheon purchased Litwin and agreed to retain Mr. Rhorer as a full-time employee at the same title and salary. At the time of the purchase, Raytheon knew of Mr. Rhorer's illness and was aware that he was no longer working from his office.

After purchasing Litwin, Raytheon sent its employees enrollment materials for participation in Raytheon's employee

---

[1] The parties agree that Mr. Rhorer did not work at his business office after July 1995.

2

benefits plan. Those materials contained a summary plan description, called Blueprints, but did not include a copy of the plan's group life insurance policy. In August 1995, Mr. Rhorer reviewed those materials, elected $990,000 in optional life insurance coverage, to take effect on September 1, 1995, and began paying the required premiums.[2] On November 21, 1995, Raytheon notified Mr. Rhorer by letter that his optional life insurance election would not take effect until he actively returned to work. By that time, Mr. Rhorer was physically unable to return to work. He died on December 1, 1995.

After the death of her husband, Rhorer filed a claim for $990,000 in benefits based on the optional life insurance policy Mr. Rhorer had elected under the plan. Raytheon denied her claim on the ground that Mr. Rhorer had not complied with the active work requirement contained in the insurance policy. That condition of coverage required that participating employees "be actively at work on full time at the business establishment of the Employer or at other locations to which the Employer's business requires the Employee to travel." Rhorer then filed an administrative appeal, which was denied.

On February 4, 1997, Rhorer, as executrix of her husband's estate, sued Raytheon in federal district court seeking to recover the proceeds from her husband's optional life insurance policy.

---

[2] It is undisputed that Raytheon's employee benefits plan is governed by ERISA.

Rhorer, on behalf of the plan, also asserted a claim against Raytheon for breach of its fiduciary duty under ERISA. *See* 29 U.S.C. §§ 1132(a)(2) & 1109.[3] Both claims rested on the contention that the summary plan description failed to adequately disclose the active work requirement, in violation of ERISA and the applicable administrative regulations. Rhorer subsequently moved for partial summary judgment on her benefits claim. Raytheon responded and filed a cross-motion for summary judgment against all of Rhorer's claims. In a memorandum opinion the district court denied Rhorer's partial summary judgment motion, granted Raytheon's motion, and dismissed Rhorer's suit in its entirety. Rhorer appeals.[4]

## II.

We review a district court's grant of summary judgment *de novo*. ***Matsushita Elec. Indus. Co. v. Zenith Radio Corp.***, 475 U.S. 574, 587 (1986); ***Todd v. AIG Life Ins. Co.***, 47 F.3d 1448, 1451 (5th Cir. 1995). Summary judgment is appropriate if the record discloses "that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In making this determination we must

---

[3] Rhorer also asserted claims under the "federal common law" for breach of contract, promissory estoppel, and waiver.

[4] On appeal Rhorer does not challenge the district court's dismissal of her claims for breach of contract and promissory estoppel.

4

evaluate the facts in the light most favorable to the non-moving party. *Matsushita*, 475 U.S. at 587; *Todd*, 47 F.3d at 1451.

### III.

### A.

The first issue we must consider is the applicable standard for reviewing Raytheon's denial of Rhorer's claim for life insurance benefits. Rhorer asserts that *de novo* review is the proper standard because this action presents the legal question of whether the summary plan description was sufficiently accurate under ERISA. *See Penn v. Howe-Baker Eng'rs, Inc.*, 898 F.2d 1096, 1100 & n.3 (5th Cir. 1990). When presented with this argument, the district court found that Rhorer's suit was more properly viewed as a challenge to Raytheon's interpretation of the plan's terms. The district court thus held that under *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), Raytheon's decision was governed instead by the abuse of discretion standard.

Rhorer's first amended complaint alleges two separate causes of action under the ERISA statute. In count one Rhorer sues under § 1132(a)(1)(B) of ERISA to recover the insurance benefits allegedly owed to her under the plan.[5] *See* 29 U.S.C.

---

[5]      29 U.S.C. § 1132(a)(1)(B) provides in relevant part:

A civil action may be brought--

(1) by a participant or beneficiary-- . . .

(B) to recover benefits due to him under the

5

§ 1132(a)(1)(B). In count two she asserts a claim under § 1132(a)(2), alleging that Raytheon violated its fiduciary duty as plan administrator by publishing a misleading and incomplete summary plan description.[6] *See* 29 U.S.C. § 1132(a)(2). We note the distinction between these two claims because each claim, as alleged, requires a different standard of review. Rhorer's claim to recover plan benefits under § 1132(a)(1)(B) is a direct

---

> terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B).

[6] 29 U.S.C. § 1132(a)(2) provides in relevant part:

> A civil action may be brought--
>
> (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title.

29 U.S.C. § 1132(a)(2). 29 U.S.C. § 1109 provides in relevant part:

> (a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109.

6

challenge to Raytheon's interpretation of the plan's terms. Accordingly, since the plan expressly vests Raytheon with the discretionary authority to construe its terms, under *Firestone* the applicable standard is whether Raytheon abused its discretion. *See Firestone*, 489 U.S. at 111-12. In contrast, Rhorer's claim under § 1132(a)(2), that Raytheon breached its fiduciary duty, turns on whether the summary plan description complies with ERISA's disclosure requirements. That claim is thus premised on a legal question which we review *de novo*. Having clarified the appropriate standards of review, we now proceed to the merits of this action. We begin with Rhorer's breach of fiduciary duty claim.

## B.

Rhorer argues that Raytheon violated its fiduciary duty as plan administrator by issuing a summary plan description that violates ERISA's disclosure requirements. *See* 29 U.S.C. § 1022(a) ("The summary plan description . . . shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan."). Specifically, Rhorer contends that the summary plan description is faulty because it fails to inform plan participants that optional life insurance is restricted by the active work requirement. Her claim is unsustainable in light of

7

the Supreme Court's decision in *Varity Corp. v. Howe*, 516 U.S. 489 (1996).

In *Varity* the Supreme Court observed that an ERISA plaintiff may bring a private action for breach of fiduciary duty only when no other remedy is available under 29 U.S.C. § 1132. *Varity*, 516 U.S. at 1077-79; *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir. 1998). Here, in addition to seeking damages on her claim for breach of fiduciary duty, Rhorer is seeking to recover plan benefits under § 1132(a)(1)(B). Indeed, it is readily apparent from Rhorer's complaint that her claim to recover plan benefits is the predominate cause of action in this suit. Accordingly, because § 1132(a)(1)(B) affords Rhorer an avenue for legal redress, she may not simultaneously maintain her claim for breach of fiduciary duty. *See Tolson*, 141 F.3d at 610-11. The district court was correct in dismissing this claim.

C.

The central issue in this appeal is whether the district court properly granted summary judgment on Rhorer's claim to recover plan benefits. To resolve that issue we must review the record to determine whether there is a triable issue of fact as to whether Raytheon abused its discretion in denying Rhorer's claim for insurance benefits.

In this Circuit courts generally employ a two-step analysis

8

for determining whether a plan administrator abused its discretion in denying a participant plan benefits. *Spacek v. Maritime Assoc., I L A Pension Plan*, 134 F.3d 283, 292-93 (5th Cir. 1998) (citing *Wildbur v. Arco Chem. Co.*, 974 F.2d 631, 637 (5th Cir. 1992)). A court first determines the legally correct interpretation of the plan, and whether the administrator's interpretation accords with the proper legal interpretation. *Spacek*, 134 F.3d at 292. If the administrator's construction is legally sound, then no abuse of discretion occurred and the inquiry ends. *Id.* But if the court concludes that the administrator has not given the plan the legally correct interpretation, the court must then determine whether the administrator's interpretation constitutes an abuse of discretion. *Id.* at 293.

### 1.

Rhorer contends that Raytheon's interpretation of the plan is incorrect because it ignores the plain language of the summary plan description. She insists that while the underlying insurance policy sets forth an active work requirement for optional life insurance, nothing in the summary plan description imposes that requirement. The inconsistency is significant, Rhorer argues, because under *Hansen*, 940 F.2d 971 (5th Cir. 1991), the terms of the summary plan description control over inconsistent terms in the policy. Rhorer asserts that Raytheon's interpretation of the plan

is flawed because it overlooks this fundamental rule, and focuses exclusively on the terms of the insurance policy.[7]

In **Hansen** the plaintiff filed a claim for life insurance benefits, alleging that under the summary plan description he was entitled to 60% of the principal sum, or $120,000. The insurer denied the claim, relying instead on the conflicting terms of the underlying policy which indicated that the plaintiff was due only 40% of the principal sum, or $80,000. On appeal the insurer argued that the summary plan description must be read in conjunction with the plan document. The insurer also maintained that when a summary plan description conflicts with the underlying policy, the terms of the policy control. We rejected those arguments and affirmed the district court's judgment in favor of the plaintiff.

We began by observing that ERISA imposes certain requirements on a summary plan description.

> A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries . . . . The

---

[7] This Court has outlined three general factors which may be used to determine whether a plan administrator's interpretation of a plan is legally correct: (1) whether the administrator has given the plan a uniform construction; (2) whether the interpretation is consistent with a fair reading of the plan; and (3) any unanticipated costs resulting from different interpretations of the plan. **Threadgill v. Prudential Sec. Group, Inc.**, 145 F.3d 286, 292 (5th Cir. 1998). These factors are not particularly helpful to our analysis, however, because here we are reviewing, specifically, the plan administrator's interpretation of the *summary plan description*. Accordingly, in determining whether Raytheon's interpretation of the summary plan description was legally correct, we will use more particularized standards.

> summary plan description shall . . . be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan.

*Hansen*, 940 F.2d at 980 (quoting 29 U.S.C. § 1022(a)). We then reasoned that those requirements would be eviscerated by a rule that allowed the terms of the policy to control whenever there was a conflict between the policy and the summary plan description. We explained:

> The result would be that before a participant in the plan could make use of the summary, she would have to compare the summary to the policy to make sure that the summary was unambiguous, accurate, and not in conflict with the policy. Of course, if a participant has to read and understand the policy in order to make use of the summary, then the summary is of no use at all.

*Id.* at 981. We thus held that "the summary plan description is binding, and [] if there is a conflict between the summary plan description and the terms of the policy, the summary plan description shall govern." *Id.* at 982. We also found that the rule of *contra proferentum*, that ambiguities in contracts are to be resolved against the drafter, must be applied when a summary plan description contains an ambiguous term or requirement. *Id.* Thus, ambiguous terms in summary plan description are resolved in the employee's favor.

On appeal Raytheon defends its decision by pointing to the

11

terms of the policy, which expressly impose an active work requirement for optional life insurance.[8] Raytheon further asserts that the policy is not in conflict with the summary plan description because it too sets forth an active work requirement. Raytheon insists that since there is no conflict between the policy and the summary plan description, **Hansen** does not control. We disagree.

Raytheon's claim that the summary plan description contains an active work requirement for optional life insurance is premised on a provision in the first section of the summary plan description, entitled "General Information." That provision, which follows under the heading "When Coverage Begins," states "[i]f you are a new employee, coverage under the Flexible Benefits Program generally begins the first day of the month following your hire, provided you are actively at work." Raytheon argues that this statement indicates that the active work requirement applies to each and every benefit under the plan.

If we viewed the quoted statement in isolation, without reference to other provisions in the summary plan description, we would be more inclined to agree with Raytheon's position. But we cannot review the provision in a vacuum, as it is well settled that the summary plan description must be read as a whole. **Hansen**, 940

---

[8]    The parties do not dispute that if optional life insurance carries an active work requirement, Mr. Rhorer did not satisfy that requirement.

F.2d at 98.[9]  When we view the summary plan description in its entirety, we find that Raytheon's argument carries considerably less force.

When we venture beyond the general introduction, into the individual sections that detail particular benefits, we immediately notice that some of those sections expressly contain an active work requirement, while others do not.  The sections on short and long term disability benefits, for example, specifically state that coverage begins on the employee's first day of active work.  The section on health benefits, however, does not.  Nor do the sections on dental care, flexible spending accounts, or retirement benefits.  Those sections simply state that "all full-time salaried employees" are eligible.

The most striking example of this incongruity is found in the life insurance section itself.  The section seems to establish an active work requirement for basic, non-contributory life insurance by stating that coverage begins "on your first day of work."  But it conspicuously omits the language in the subsequent provision that addresses optional life insurance coverage.  The optional life insurance provision merely states "[i]f you elect any of the optional plans . . . coverage begins on the first day of the month

_____

[9]    A less holistic approach would be "an unrealistically narrow view of how a reasonably prudent employee would read and review this important document."  **Sharron v. Amalgamated Ins. Agency Servs., Inc.**, 704 F.2d 562, 566 (11th Cir. 1983).

after your date of hire if you enroll within 31 days after you become eligible."  The wording of this provision plainly suggests that, in comparison to basic life insurance, optional life insurance simply begins one month after your date of hire so long as you elect coverage within the stated time limit.[10]

Thus, when we read the summary plan description as a whole, we see that some benefits are expressly conditioned on an active work requirement, while others are not.  Moreover, we see that very same inconsistency in the life insurance section, where only basic life insurance seems to be restricted by the active work requirement. All of this suggests to the reader that not all benefits under the plan are governed by an active work requirement, and that individual sections of the summary plan description must be consulted to determine whether a particular benefit carries the

_____

[10]    We searched for other provisions in the summary plan description that would assist in squaring this apparent incongruity, but found none.  There is a paragraph in the general introduction with the heading "Who is Eligible."  But in that paragraph there is no reference to an active work requirement. That paragraph merely states:

> All full-time salaried employees are eligible
> for the benefit plans that make up *Blueprints*,
> Raytheon Engineers & Constructors' Flexible
> Benefits Program.  Refer to the overview chart
> on the preceding pages for specific
> eligibility information on each plan in
> *Blueprints*.

The referenced overview chart offers no additional help.  It lists all the various benefits under the plan, details the eligibility requirements of each, but fails to mention an active work requirement for any of the benefits.

14

requirement.[11] It thus casts doubt on Raytheon's assertion that the phrase "coverage under the Flexible Benefits Program generally begins the first day of the month following your hire, provided you are actively at work" establishes a universal active work requirement covering all benefits under the plan.

Accordingly, while the general information section suggests that an active work requirement may apply to all benefits under the plan, the selective use of the active work requirement in the individual sections strongly implies the opposite. In light of those conflicting inferences, a reasonable plan participant could not read the summary plan description and know with any degree of certainty whether optional life insurance was restricted by the active work requirement. She would have to refer to the actual policy for clarification.

We thus conclude that the summary plan description is ambiguous as to whether the active work requirement applies to optional life insurance. We further find that under *Hansen* the correct legal interpretation of the plan requires that the ambiguity be resolved in Rhorer's favor. Because Raytheon resolved

---

[11] It is a natural inference, as expressed by the familiar maxim "expressio unius est exclusio alterius," or, the express mention of one thing implies the exclusion of others. *Branson v. Greyhound Lines, Inc., Amalgamated Council Retirement & Disability Plan*, 126 F.3d 747, 758 (5th Cir. 1997).

15

this issue against Rhorer, we hold that its interpretation of the plan is legally incorrect.

In reaching this conclusion we reject Raytheon's argument that *Hansen* is only controlling in cases where there is a positive conflict between the summary plan description and the policy. Though it is true that in *Hansen* there was an outright conflict between the summary plan description and policy, our holding was in no way limited to those facts. In *Hansen* we clearly stated that an "ambiguity in the summary plan description must be resolved in favor of the employee." *Hansen*, 940 F.2d at 982. And in subsequent cases we acknowledged the continuing validity of that holding. *Fallo v. Piccadilly Cafeterias, Inc.*, 141 F.3d 580, 584 (5th Cir. 1998); *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 818 (5th Cir. 1997).

We also reject Raytheon's contention that we cannot apply the rule of *contra proferentem* in light of the Supreme Court's decision in *Firestone*. It is true, as Raytheon points out, that other circuits have held that *contra proferentem* does not apply when the plan administrator has expressly been given discretion to interpret the plan. *See, e.g.*, *Cagle v. Bruner*, 112 F.3d 1510 (11th Cir. 1997); *Vizcaino v. Microsoft Corp.*, 97 F.3d 1187 (9th Cir. 1996); *Morton v. Smith*, 91 F.3d 867 (7th Cir. 1996); *Pagan v. NYNEX Pension Plan*, 52 F.3d 438 (2d Cir. 1995). But as we explained in *Spacek v. Maritime Ass'n*, 134 F.3d 283, 298 n.14 (5th Cir. 1998),

16

this Court uses a unique two-step approach to apply the abuse of discretion standard, and *contra proferentem* may properly be used under the first step.

2.

Having determined that Raytheon's interpretation was not legally correct, we next must decide whether there is a material fact issue with respect to whether Raytheon abused its discretion in denying Rhorer's claim. Three factors are important in this analysis: (1) the internal consistency of the plan under the administrator's interpretation; (2) any relevant regulations formulated by the appropriate administrative agencies; and (3) the factual background of the determination and any inferences of bad faith. **Wildbur**, 974 F.2d at 638. Applying these factors to the record before us, we find that the district court erred in granting summary judgment.

There is no question that Raytheon's denial of Rhorer's claim did not disturb the internal consistency of the plan, since the plan expressly provides that optional life insurance is conditioned on the active work requirement. But the abuse of discretion inquiry in this case is directed at Raytheon's interpretation of *the summary plan description*, not its interpretation of the plan itself. Thus, the first factor does not aid in our analysis.

The federal regulations that govern summary plan descriptions

17

provide that a summary plan description "must not have the effect to misleading, misinforming or failing to inform participants and beneficiaries." 29 C.F.R. § 2520.102-2(b). Also, the summary plan description must contain "a statement clearly identifying circumstances which may result in disqualification, ineligibility, or denial . . . of any benefits that a participant or beneficiary might otherwise reasonably expect the plan to provide." 29 C.F.R. § 2520.102-3(l). Finally, the administrative regulations expressly require that "exceptions, limitations, reductions, or restrictions of plan benefits" be clearly noted. 29 C.F.R. § 2520.102-2(b).

Thus, the relevant administrative regulations dictate that restrictive provisions, like the active work requirement, be properly disclosed in the summary plan description. In this case, however, it appears that Raytheon violated those regulations by providing Mr. Rhorer with an ambiguous summary plan description that did not clearly indicate that optional life insurance is restricted by an active work requirement. The second factor thus favors a finding that Raytheon abused its discretion.

The factual background surrounding Raytheon's decision to deny Rhorer's claim is not in dispute. After her benefits claim was denied, Rhorer contacted Raytheon through her attorney on several occasions, explaining that the summary plan description was ambiguous and that Raytheon was required to resolve the ambiguity in her favor. Rhorer made clear her contention that federal law does not allow a plan participant to resort to the terms of the

18

plan in order to resolve an ambiguity in the summary plan description. Although confronted with this very specific contention Raytheon responded with two letters that merely recited the terms of the underlying policy. In those letters Raytheon simply stated that the policy contained an active work requirement that Mr. Rhorer had not satisfied. There is nothing in the record which indicates, or even suggests, that Raytheon interpreted the summary plan description and, in the exercise of its discretion, determined that it was unambiguous. This too points to an arbitrary and capricious decision.

Finally, there is also some evidence, although slight, that Raytheon acted in bad faith. Raytheon purchased Mr. Rhorer's company with knowledge of his physical illness. It nevertheless classified Mr. Rhorer as a full-time employee, continued to pay his full salary, and allowed him to enroll in the optional life insurance program despite his poor health. Then, less than two weeks before Mr. Rhorer's death, when he was unable to return to active work, Raytheon sought to cancel his optional life insurance policy based on his failure to satisfy the active work requirement. Raytheon took this action even though it had known from the beginning that Mr. Rhorer was no longer working from his office. Though far from conclusive, these facts do smack of bad faith.

Two of the three factors point to a finding of an abuse of discretion. In light of that fact we must conclude that the district court erred in granting summary judgment. In reaching

19

this decision we acknowledge that these factors do not conclusively establish that Raytheon abused its discretion. But the two factors, when viewed together in a light most favorable to Rhorer, do give rise to a genuine issue of material fact as to whether Raytheon abused its discretion.[12]

IV.

Raytheon argues in the alternative that Rhorer is barred from recovering her benefits by the state-law doctrine of quasi estoppel. Under Texas law, "[t]he principle of quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position he has previously taken." *Enochs v. Brown*, 872 S.W.2d 312, 317 (Tex. App.--Austin 1994, no

---

[12] Raytheon contends that even if the summary plan description is ambiguous, Rhorer's claim must fail because there is insufficient evidence that Mr. Rhorer relied on the summary plan description. We reject this argument. This Court has never held that an ERISA claimant must prove reliance on a summary plan description in order to prevail on a claim to recover benefits. *See* *Schadler v. Anthem Life Ins. Co.*, 147 F.3d 388, 393 n.4 (5th Cir. 1998) (acknowledging the issue but declining to resolve it); *Hansen*, 940 F.2d at 983 (same). Moreover, even were we to find that reliance is a necessary element, there is sufficient evidence of reliance to preclude summary judgment in this case. Here, the record demonstrates that Mr. Rhorer received and reviewed the summary plan description and understood it to mean that he was eligible for $990,000 in life insurance benefits. He then paid the required premiums. Under *Hansen*, these facts are sufficient to raise a triable issue of fact as to whether Mr. Rhorer relied on the summary plan description. *See* *Hansen*, 940 F.2d at 983 (finding that even if reliance is a required element, reliance was established by fact that plan participant read and understood the summary plan description).

20

writ). The doctrine applies in those cases where it would be unconscionable to allow a person to maintain a position inconsistent with one in which he accepted a benefit. ***Stuebner Realty 19, Ltd. v. Cravens Road 88, Ltd.***, 817 S.W.2d 160, 164 (Tex. App.--Houston [14th Dist.] 1991, no writ).

In this case Raytheon contends that quasi estoppel bars Rhorer's action because she previously applied for and received insurance proceeds under a separate policy with Sun Life which provided benefits if Mr. Rhorer became medically unable to work after August 31, 1995. Raytheon asserts that this fact demonstrates that Mr. Rhorer could not have satisfied the active work requirement in Raytheon's life insurance policy even if he had known of the requirement. Raytheon's argument misses the mark.

The critical issue in this appeal is whether the active work requirement was adequately disclosed in the summary plan description. That is our focus because the terms of the summary plan description are controlling, and ambiguities in the document are resolved in favor of the plan participant. As such, whether Mr. Rhorer satisfied the active work requirement in the underlying policy is irrelevant if the summary plan description did not adequately disclose the requirement. Likewise, Raytheon's claim that Mr. Rhorer could not have satisfied the active work requirement is immaterial to our analysis. We reject the

contention.[13]

V.

Rhorer argues that the district court erred in granting summary judgment on her claim that Raytheon waived the active work requirement. Rhorer contends that there is a genuine issue of material fact based on evidence that Raytheon enrolled Rhorer in the optional life insurance program, accepted premiums from Mr. Rhorer for several months, and then did not return those premiums for more than a year. We agree.

Waiver is the "voluntary or intentional relinquishment of a known right." *Pitts v. American Sec. Life Ins. Co.*, 931 F.2d 351, 357 (5th Cir. 1991). In this case, there is summary judgment evidence that Raytheon knew of Mr. Rhorer's illness in June 1997, before it bought his company and well before he enrolled in the life insurance program. There also is evidence that Raytheon knew that Mr. Rhorer had stopped working from his office because of his illness. In spite of that knowledge, the record indicates that Raytheon allowed Mr. Rhorer to enroll in optional life insurance, accepted his premiums, and did not return the premiums for more than a year. Viewing that evidence in a light most favorable to Rhorer, a reasonable jury could conclude that Raytheon knowingly

---

[13] We note in passing that we have serious doubts as to whether the Texas doctrine of quasi estoppel could be applied in this federal ERISA action.

22

waived its right to enforce the active work requirement.  The district court erred in granting summary judgment on this claim.

## VI.

We affirm the district court's summary judgment dismissal of Rhorer's breach of fiduciary claim.  We reverse the district court's judgment dismissing Rhorer's claim to recover benefits and her waiver claim.  We remand this action for further proceedings consistent with this opinion.