United States Court of Appeals
Fifth Circuit

**F I L E D**

August 16, 2007

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

―――――

No. 05-31063

―――――

WILLIE WASHINGTON, JR.

Plaintiff-Appellee

v.

MURPHY OIL USA, INC., et al.

Defendants-Appellants

―――――

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 04-CV-1364

―――――

Before JOLLY, HIGGINBOTHAM, AND DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

This case involves an employee suing for disability benefits under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq. The district court below found that the terms of the Summary Plan Description ("SPD") conflicted with the plan itself and entered summary judgment in the employee's favor on the ground that an employee need not prove reliance on the conflicting terms of an SPD in order to prevail on a claim for benefits. We affirm.

I.

Willie Washington ("Washington"), plaintiff, was a plant operator at Murphy Oil USA, Inc.'s ("Murphy") Meraux Refinery beginning in 1990. He was covered by the Retirement Plan for Employees of Murphy Oil U.S.A., Inc., represented by the United Steelworkers of America, Local No. 8363 (the "Plan"), which the parties agree is governed by ERISA.

On October 12, 1999, he injured his back at work and took a medical leave of absence. He received paychecks until August 10, 2001. When the paychecks stopped, he sought permission to return to work. However, he was unable to get medical clearance.

As part of separate employment discrimination and workers' compensation claims, Washington's counsel inquired about his entitlement to disability benefits. Murphy's counsel responded that because the Plan required at least ten years of service to qualify for disability benefits and because Washington only had "8 years, 10 months, and 11 days" of vesting credit, he did not qualify for disability benefits.

As part of the settlement of the discrimination and workers' compensation claims, the parties agreed that Washington's termination date was the date of the settlement agreement, June 14, 2002. In a letter sent to Washington by Murphy, this date was used in calculating Washington's vesting period, bringing his service to 11.453 years. When Washington sought benefits on the basis of this letter, Ronald Smith, the Benefits Manager, notified Washington that this calculation was in error and that under the Plan, his service ended on October 12, 2000. Smith stated in his deposition that an inexperienced assistant was responsible for the error. The parties contested this issue before the district court, but it did not rule on this basis and the issue is not before us.

Instead, the district court ruled that the SPD provided to Washington as part of his benefits plan was in conflict with the Plan itself. Based on our prior precedent, Hansen v. Continental Ins. Co., 940 F.2d 971, 981-82 (5th Cir. 1991),

the district court ruled that because the SPD only required five years of service as opposed to the ten-year requirement in the Plan, the five-year requirement controlled. Accordingly, the district court granted summary judgment to Washington on the ground that his eight years of service was sufficient to qualify for benefits under the SPD. The district court rejected Murphy's argument that in the event of a conflict, the employee must also show reliance. Murphy filed this appeal.

II.

Because we are evaluating the factual and legal determinations of an ERISA administrator, the modified abuse of discretion standard applies in this case. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Rhorer v. Raytheon Eng'rs & Constructors, Inc., 181 F.3d 634, 638-40 (5th Cir. 1999). Those determinations are granted deference using a two-step process. First, the court determines whether the administrator's interpretation of the plan was legally correct. Rhorer, 181 F.3d at 639-40. If so, then the inquiry ends. Id. If not, the court then determines whether that interpretation constitutes an abuse of discretion. Id. at 640.

III.

A.

An SPD is a requirement under ERISA for employers providing benefits plans to employees. In essence, it is a shorter, simplified version of the plan itself and is provided to employees with the goal of allowing them to understand what would otherwise be a complex, somewhat incomprehensible document. See 29 U.S.C.A. § 1022(a); Hansen, 940 F.2d at 980. This effort at simplification, however, often produces situations in which the terms of the SPD conflict with the more detailed terms of the plan. This court has held that in such situations, the terms of the SPD control and are binding. Id. at 981-82. The district court

in this case held that the terms of the SPD and the Plan at issue conflict. We agree.

> The SPD describes disability pension as follows:

> DISABILITY PENSION - A vested employee who shall become, through some unavoidable cause, Permanently Disabled, shall be eligible to retire and have his Pension commencing not later than the seventh month following the occurrence of the disability. To obtain the disability pension, the employee must not be in one of the exceptions listed in the Plan and must be able to prove that he is permanently disabled and not able to continue his employment with the Company.

The SPD defines "vesting" in an earlier section:

> "Vesting" means the completion of <u>five (5) Years</u> of Benefit Service whereby you acquire a non-forfeitable right to receive a pension benefit under the retirement plan at a future point in time.

The Plan, however, describes disability pension as follows:

> <u>6.1 Disability Pension</u>: An Employee who shall have at least <u>10 years</u> of Vesting Service as a Participant of the Plan and who shall become, through some unavoidable cause, Disabled, shall be eligible to retire and after his Retirement to receive a Disability Pension.

> <u>a. Determination of Disability</u>: Disability shall be deemed to have resulted from an unavoidable occurrence for the purposes of this Plan, unless it (i) was contracted, suffered or incurred while the Participant was engaged in or resulted from his having engaged in a felonious criminal enterprise, or (ii) resulted from his habitual drunkenness or addiction to narcotics, or (iii) resulted from an intentional self-inflicted injury. Disability resulting from any such enumerated cause, or exclusively from military service which shall prevent a Participant from returning to employment or for which a Participant received a pension from the national or state government, shall not entitle the Participant to a Pension under this paragraph.

> . . .

> b. Commencement: Payment of a Disability Pension shall commence no earlier than the seventh (7th) month following the eligible Participant's termination of employment with all Affiliated Employers due to Disability and shall continue only as long as the Participant is disabled.

In short, because the SPD defines "vesting" as the completion of five years of service, any employee with five years of service who becomes permanently disabled qualifies for benefits under the SPD. The Plan, however, plainly conflicts with the SPD by requiring "at least 10 years of Vesting Service" to qualify.

Murphy argues that because the SPD states that after five years of service, an employee has a "non-forfeitable right to receive a pension benefit under the retirement plan at <u>a future point in time</u>," and further that "[t]o obtain the disability pension, the employee must not be in one of the exceptions listed in the Plan," it is consistent to say that a vested employee has a right to disability benefits, but only five years into the future once they become eligible. In short, according to Murphy, the 10-year requirement is simply one of the exceptions referenced in the SPD.

We, like the district court, find this interpretation untenable. Although the SPD references a list of exceptions, the word "exception" does not appear anywhere in the section of the Plan dealing with disability benefits. Section 6.1(a) does contain a list of disqualifying scenarios such as when the employee was injured as a result of (1) engaging in a felonious criminal enterprise, (2) habitual drunkenness or addiction to narcotics, or (3) an intentional self-inflicted injury. We agree with the district court that the word "exceptions" in the SPD could only be referring to these disqualifying scenarios as set forth in section 6.1(a) of the Plan. Moreover, the ten-year requirement is not an "exception" to coverage; it does not foreclose eligibility in situations where an employee would otherwise be eligible. Instead, it sets forth a starting point for determining

whether an employee qualifies for disability benefits. In our view, like the district court, the clear implication of the SPD and the Plan are the same: any vested employee is eligible for benefits so long as they do not fall within one of the disqualifying scenarios listed in Section 6.1(a) of the Plan. According to the SPD, benefits vest after five years of service. According to the Plan, benefits vest after ten years of service. The conflict is plain.

Because the terms of the SPD and the Plan conflict, the terms of the SPD control and are binding on Murphy. See Hansen, 940 F.2d at 981-82. Accordingly, disability benefits begin to vest after five years of service. Because it is undisputed that Washington has at least eight years of service, his disability benefits have unequivocally vested.

We have little difficulty making this determination even under the modified abuse of discretion standard. In fact, counsel for Murphy eventually conceded during rebuttal at oral argument that the two documents conflict. Moreover, this court has held that "when the trustee's interpretation of a plan is in direct conflict with express language in a plan, this action is a very strong indication of arbitrary and capricious behavior." Batchelor v. International Brotherhood of Electrical Workers Local 861 Pension and Retirement Fund, 877 F.2d 441, 445 (5th Cir. 1989) (quoting Dennard v. Richards Group, Inc., 681 F.2d 306, 314 (5th Cir. 1982). Similarly, when a plan administrator's interpretation of a controlling SPD is in direct conflict with the express and clear language of the SPD, this action is also a very strong indication of arbitrary and capricious behavior.

B.

After concluding that the terms of the SPD and the Plan conflict, the district court went on to hold that an ERISA claimant need not show reliance on the conflicting terms of the SPD in order to prevail on a claim for benefits. This court has declined to address this issue on three separate occasions. See Rhorer,

181 F.3d at 644 n. 12; Schadler v. Anthem Life Ins. Co., 147 F.3d 388, 393 n.4 (5th Cir. 1998); Hansen, 940 F.2d at 983. Because there is conflicting evidence in the record regarding the issue of reliance, we must address this issue today.[1]

In Burstein, the Third Circuit, relying primarily on contract law, held that an ERISA claimant need not show reliance or prejudice when the terms of an SPD conflict with the plan itself. 334 F.3d at 380-82. As the Third Circuit explained:

> Claims for ERISA plan benefits under ERISA § 502(a)(1)(b) are contractual in nature. . . . If an SPD conflicts with a plan document, then a court should read the terms of the 'contract' to include the terms of a plan document, as superseded and modified by conflicting language in the SPD. And, just as a court's enforcement of a contract generally does not require proof that the parties to the contract actually read, and therefore relied upon, the particular terms of the contract, we are persuaded that enforcement of an SPD's terms under a claim for plan benefits does not require a showing of reliance.

---

[1] We certainly do not write on a clean slate. Indeed, there appears to be a five-way circuit split regarding whether an ERISA claimant needs to establish reliance and/or prejudice based on the conflicting terms of an SPD. The Third and Sixth Circuits do not require a showing of reliance. See Burstein v. Ret. Account Plan for Employees of Allegheny Health Edu. and Research Found., 334 F.3d 365, 380-82 (3d Cir. 2003); Edwards v. State Farm Mut. Auto. Ins. Co., 851 F.2d 134, 137 (6th Cir. 1988). The Second Circuit also does not require a showing of reliance, but does require a showing of a likelihood of prejudice, which an employer may then rebut through evidence that the deficient SPD was in effect a harmless error. See Burke v. Kodak Ret. Income Plan, 336 F.3d 103, 111-14 (2d Cir. 2003). The Seventh and Eleventh Circuits require a showing of reliance. See Health Cost Controls, Inc. v. Washington, 187 F.3d 703, 711 (7th Cir. 1999); Branch v. G. Bernd Co., 955 F.2d 1574, 1579 (11th Cir. 1992). The First, Fourth, and Tenth Circuits require a showing of reliance or prejudice, though it appears that the terms "reliance" and "prejudice" are sometimes treated synonymously. See Govoni v. Bricklayers, Masons & Plasterers International Union, Local No. 5 Pension Fund, 732 F.2d 250, 252 (1st Cir. 1984); Aiken v. Policy Management Sys. Corp., 13 F.3d 138, 141 (4th Cir. 1993); Chiles v. Ceridian Corp., 95 F.3d 1505, 1519 (10th Cir. 1996). Finally, the Eighth Circuit requires a showing of reliance or prejudice, but only if the SPD is "faulty." See Palmisano v. Allina Health Sys., 190 F.3d 881, 887-88 (8th Cir. 1999); Marolt v. Alliant Techsystems, 146 F.3d 617, 621-22 (1998).

Id. at 381 (emphasis in original).  This court has also recognized that ERISA claims are contractual in nature.  See, e.g., Weir v. Federal Asset Disposition Ass'n, 123 F.3d 281, 286 (5th Cir. 1997).  In Hansen, we held:

> [T]he summary plan description is binding, and that if there is a conflict between the summary plan description and the terms of the policy, the summary plan description shall govern.  Any other rule would be, as the Congress recognized, grossly unfair to employees and would undermine ERISA's requirement of an accurate and comprehensive summary.

940 F.2d at 982 (emphasis added).  Looking to the law of contracts of insurance, we stated that "the ambiguity in the summary plan description must be resolved in favor of the employee and made binding against the drafter."  Id. (emphasis added).  We refused to place the burden of careless drafting on the employee, arguing that "[a]ccuracy is not a lot to ask. . . . especially . . . in return for the protection afforded by ERISA's preemption of state law causes of action -- causes of action which threaten considerably greater liability than that allowed by ERISA."  Id.  Finally, we concluded that "drafters of a summary plan description may not disclaim its binding nature."  Id. (emphasis added).

Accordingly, we hold that when the terms of an SPD and an ERISA plan conflict and the terms of the conflicting SPD unequivocally grant the employee with a vested right to benefits, the employee need not show reliance or prejudice.[2]  We find that this approach is most consistent with ERISA, which is designed to protect employees; and most consistent with our opinion in Hansen,

_____

[2] Our holding today is limited to situations in which the conflicting terms of an SPD unequivocally grant the employee with a vested right to benefits.  We are sensitive to concerns about creating a windfall for employees in other situations, such as when the terms of the conflicting SPD are susceptible to different interpretations or the conflict between the SPD and the plan is de minimis.  Whether we would require a showing of reliance or prejudice in such cases is an issue we need not decide today because the terms of the conflicting SPD in this case unequivocally provide Washington with a vested right to disability benefits.

which refused to place the burden of conflicting SPDs on plan beneficiaries. Because the SPD in this case unequivocally vests disability benefits after five years of service and Washington has at least five years of vesting credit, as a matter of contract law, his right to disability benefits vested and it cannot be taken away. Thus, the district court was correct in concluding that Washington need not show reliance or prejudice.

AFFIRMED.