# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 2, 2011

No. 10-50640

Lyle W. Cayce
Clerk

PAUL D. HORN,

Plaintiff - Appellant

v.

OWENS-ILLINOIS EMPLOYEE BENEFITS COMMITTEE; OWENS-
ILLINOIS, INC. HOURLY EMPLOYEES WELFARE BENEFIT PLAN;
OWENS-ILLINOIS, INC. HOURLY RETIREMENT PLAN,

Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:09-CV-208

Before JONES, Chief Judge, and KING and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

Plaintiff–Appellant Paul Horn filed this action against
Defendants–Appellees, claiming that he was denied disability benefits and
retirement benefits to which he was entitled, in violation of the Employee
Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*
Defendants–Appellees moved for summary judgment on all of Horn's claims,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 10-50640

arguing that Horn's claim for disability benefits was barred because he had not timely appealed his denial of benefits.  Defendants–Appellees also argued that Horn was not entitled to retirement benefits because qualifying for disability benefits was a prerequisite for the retirement benefits he sought.  The district court agreed and granted summary judgment in Defendants–Appellees' favor. We AFFIRM the judgment of the district court.

## I.  FACTUAL & PROCEDURAL BACKGROUND

Paul Horn was an employee of Owens-Illinois, Inc. and received benefits from his employment.  The benefits at issue in this appeal are permanent and total disability ("PTD") benefits, administered under a Welfare Benefit Plan, and disability retirement income ("DRI") benefits, administered under a Retirement Plan.  The Welfare Benefit Plan and the Retirement Plan were described to Owens-Illinois employees in a Summary Plan Description (the "Description").

Horn sustained a serious, non-work related injury on or about August 17, 2004.  Horn's last day worked was August 16, 2004.  Horn applied for PTD benefits on February 17, 2005, and Social Security Disability benefits on February 18, 2005.  The claims administrator, Aetna Life Insurance Company ("Aetna"), denied Horn's application for PTD benefits on March 1, 2005.  Horn did not appeal this denial.  On July 11, 2006, Horn was notified that his employment at Owens-Illinois was terminated.

Horn was awarded Social Security Disability benefits on March 5, 2007, and Horn contacted Owens-Illinois seeking "every benefit to which he [was] entitled as a result of the determination by Social Security."  Owens-Illinois denied his request as untimely.  In 2008, Horn sent Owens-Illinois a request for PTD and DRI benefits in light of his entitlement to Social Security Disability benefits, but this request was rejected as untimely.  Owens-Illinois also treated this second request as an appeal from its November 2007 denial of Horn's request for PTD and DRI benefits.  The Owens-Illinois Employee Benefits

2

No. 10-50640

Committee (the "Committee"), which is the plan administrator for the Welfare Benefit Plan and the Retirement Plan, denied Horn's claims, reasoning: (1) Horn was not eligible for PTD benefits because he had not timely appealed the 2005 denial of those benefits; and (2) Horn was not eligible for DRI benefits because his application for PTD benefits was not approved.

Horn filed a complaint against Owens-Illinois, the Committee, the Welfare Benefit Plan, and the Retirement Plan (collectively "Defendants"), as well as Aetna, in federal court under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1101 *et seq.* Horn alleged that the Committee's interpretation of the Welfare Benefit Plan and the Retirement Plan was legally incorrect and sought the benefits due to him under those plans, attorney's fees, and costs. *See* 29 U.S.C. § 1132(a)(1)(B), (g). Defendants filed a motion for summary judgment, seeking dismissal of all of Horn's claims. Horn filed a cross-motion for summary judgment, seeking his PTD and DRI benefits. The district court granted Defendants' motion for summary judgment, and denied Horn's cross-motion. The district court concluded that Horn's request for PTD benefits was barred for failure to exhaust his administrative remedies. With respect to his request for DRI benefits, the district court concluded that Horn was not entitled to DRI benefits because DRI eligibility is conditioned on approval for PTD benefits. The district court therefore held that the Committee's interpretation of the Description was legally correct and the denial of PTD and DRI benefits was not an abuse of discretion. Horn timely appealed.[1]

---

[1] Aetna is not a party to this appeal because the district court dismissed all claims against Aetna pursuant to a stipulation of dismissal.

## II.  LEGAL STANDARDS

ERISA authorizes a civil action by a plan participant to "recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B).  We review the district court's grant of summary judgment in an ERISA action *de novo*. *Stone v. UNOCAL Termination Allowance Plan*, 570 F.3d 252, 257 (5th Cir. 2009).  When the plan administrator has the authority to interpret the plan, as it does in this case, we review its decision denying benefits for an abuse of discretion, using a two-step analysis.  *Id.*

First, we determine whether the administrator's determination was legally correct, which is based on three factors:  "(1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan."  *Id.* at 257–58 (citation and internal quotation marks omitted).  "The most important factor in this three-part analysis is whether the administrator's interpretation was consistent with a fair reading of the plan."  *Id.* at 258.

In addition to the above factors, there are some "particularized standards" that apply in evaluating whether the administrator's interpretation of a Summary Plan Description, as opposed to the plan itself, is legally correct.  *See Rhorer v. Raytheon Eng'rs & Constructors, Inc.*, 181 F.3d 634, 640 n.7 (5th Cir. 1999).  When there is a conflict between the terms of a plan and the Description for that plan, the Description controls.  *Id.* at 640.  Ambiguities in the Description are resolved in the employee's favor, and the Description must be interpreted as a whole.  *Id.* at 640–41.  Provisions of the Description "must be read and interpreted from the perspective of a layperson."  *Harris Methodist Fort Worth v. Sales Support Servs. Inc. Emp. Health Care Plan*, 426 F.3d 330, 338 (5th Cir. 2005) (citation omitted).

No. 10-50640

If the administrator's determination was legally correct, there was no abuse of discretion and our inquiry is at an end. *See Stone*, 570 F.3d at 257. If, however, we conclude that the administrator's interpretation was legally incorrect, we proceed to determine whether the administrator's decision was an abuse of discretion. *Id.* "We reach a finding of abuse of discretion only where the plan administrator acted arbitrarily or capriciously." *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 (5th Cir. 2009) (citation and internal quotation marks omitted).

## III.  ANALYSIS

### A.    Denial of PTD Benefits

The parties' dispute over Horn's entitlement to PTD benefits centers on the language of the Description.  The Description states that an employee is entitled to PTD benefits if he:  (1) becomes "permanently and totally disabled before [he] reach[es] age 65"; (2) files "a claim within 12 months after [he] stop[s] active work with" Owens-Illinois; and (3) is "unable to work for the rest of [his] life at any gainful occupation for which [he is] fitted by [his] education, training, or experience or for which [he] could reasonably become fitted."  Alternatively, under the Description, an employee may qualify for PTD benefits if

> on or after April 1, 1999, [he is] under age 65 and receive[s] an award for Social Security Disability benefits.  That award must be submitted to the insurance company responsible for making the PTD award decisions.  Claim filing must meet the requirements described in PTD Benefit Claims and Appeals [on the following page].

The PTD Benefit Claims and Appeals provision in the Description states that claims "for PTD benefits must be filed within 12 months from the last day worked."  The Description also has a longer filing period, which states that an employee may "apply for PTD within five years from [the] last day worked" if the employee has a "disabling medical condition that may change dramatically" and

No. 10-50640

he "document[s] [his] medical condition with [Owens-Illinois] before the expiration of one year from [his] last day worked."

The Committee rejected Horn's 2007 and 2008 claims for PTD benefits because he failed to timely appeal the rejection of his 2005 claim for PTD benefits. Horn concedes that he failed to appeal Aetna's 2005 denial of his request for PTD benefits, and he does not dispute the correctness of the Committee's conclusion that an appeal of the 2005 decision would be untimely.[2]

This court requires "[c]laimants seeking benefits from an ERISA plan must first exhaust available administrative remedies under the plan before bringing suit to recover benefits." *Bourgeois v. Pension Plan for Emps. of Santa Fe Int'l Corps.*, 215 F.3d 475, 479 (5th Cir. 2000). Because Horn did not exhaust the administrative appeals process by appealing the denial of his claim in 2005, his ERISA claim seeking PTD benefits that were denied to him in 2005 is barred. *See Swanson v. Hearst Corp. Long Term Disability Plan*, 586 F.3d 1016, 1018 (5th Cir. 2009) (per curiam).

Nevertheless, Horn argues that the Committee's determination that his 2007 and 2008 claims for PTD benefits were untimely appeals, rather than new claims, was legally incorrect. He avers that these requests for PTD benefits should have been treated as new, timely claims for benefits under "alternate" provisions of the Description that allow him to file a claim for PTD benefits after receiving an award for Social Security Disability. We note that the Committee did not explicitly address Horn's arguments that his 2007 and 2008 claims for PTD were separate claims for benefits authorized by the Description. Regardless, this is not a basis for reversing the district court because Horn's

---

[2] Horn states that he did not appeal Aetna's denial of his claim for PTD benefits on the advice of Owens-Illinois's personnel representative, who advised him to wait until the Social Security Administration had ruled on his claim for disability benefits. However, Horn does not argue that this reliance is a basis for excusing his failure to appeal, or is a basis for overturning the Committee's decision.

6

characterization is contrary to the plain language of the Description.  The Description clearly states that PTD claims must be filed "within 12 months from the last day worked." Horn did not make his first request for PTD benefits based on the Social Security Administration's determination that he was permanently disabled until June 7, 2007, which is nearly three years after his last day of work.  Thus, even if Horn's 2007 and 2008 PTD claims were new claims, rather than untimely appeals, they could not have been considered because they were untimely.

Horn disputes this reading of the Description on three grounds, none of which is correct.  First, he argues that this twelve-month filing period does not apply to his 2007 award of Social Security Disability benefits because the Description states that "[a]lternatively, you can qualify for PTD benefits if . . . you are under age 65 and receive an award for Social Security Disability benefits."  Although this language provides an alternate basis for qualifying for PTD benefits, this does not excuse Horn from filing his claim within a twelve-month timeframe.  The Description explicitly states that claim filing based on the award of Social Security Disability benefits  must "meet the requirements described in the PTD Benefit Claims and Appeals . . . ." The PTD Benefit Claims and Appeals provision states that "[c]laims for PTD benefits must be filed within 12 months from the last day worked."

Second, Horn argues that his 2007 and 2008 claims were timely because the Description provides a five-year filing window if the employee has "a disabling condition that may change dramatically."  The Social Security Administration's determination that he was permanently disabled does not qualify Horn for this provision.  There is no evidence that Horn's injury changed dramatically, or at all, after he filed his 2005 claim for PTD benefits.  Although Aetna and the Social Security Administration came to contrary conclusions regarding Horn's disability, this difference could not have been due to a change

No. 10-50640

in Horn's condition because the Social Security Administration concluded Horn was permanently disabled as of the date of his accident, and Horn filed his claim for Social Security Disability one day after his request for PTD benefits.

Finally, Horn argues that his claim for PTD benefits is allowed under the terms of a collective bargaining agreement (the "CBA"), which states that "if the employee has applied for and is later approved for Social Security disability, [Owens-Illinois] will qualify the employee for P.T.D." Like the Description, however, the CBA also states that an "employee applying for permanent and total disability must apply for the P.T.D. benefit and Social Security disability within twelve (12) months from the last day worked." Horn's second application for PTD benefits was well outside the CBA's twelve month window.

The Committee correctly concluded Horn's appeal from the denial of his 2005 claim for PTD benefits was untimely, and is now barred. Horn's arguments that his 2007 and 2008 requests for PTD benefits should have been treated as new claims is contrary to the clear language of the Description. Therefore, we turn to Horn's remaining claim for DRI benefits.

## B.    Denial of DRI Benefits

The district court properly concluded that the Committee's denial of DRI benefits was legally correct. Under the Retirement Plan and Description, an employee must receive PTD benefits before he is eligible for DRI benefits.

### 1.    DRI Provisions

The Retirement Plan states that

[i]n any case of Retirement from active employment with an Employer on account of permanent and total disability, evidenced by the award of benefits for permanent and total disability under any group insurance policy provided and administered by an Employer, if such benefits are provided by any such policy, or evidenced by proof satisfactory to the Committee, if such benefits are not provided by any such policy . . . the Committee shall direct

8

the Trustee to pay, or cause to be paid, to said Participant . . . a monthly disability Retirement Benefit . . . .

The corresponding Description provision explains that an employee is eligible for DRI benefits

> provided [he has] 10 or more years of credited service with [Owens-Illinois] . . . and become[s] permanently and totally disabled while [he is] an active employee. [He] will be considered permanently and totally disabled for purposes of this benefit if the insurance company approves [his] claim for permanent and total disability under the PTD provision of the group insurance program . . . .

The claims provision of the Description states: "If your claim for PTD . . . is approved by the group insurance company, you may then request a final disability retirement calculation and submit copies of birth certificates (yours and your spouse's) and a completed retirement application to the Retirement Department." Under the Description, DRI benefits "cannot become effective until the Retirement Department . . . receives a signed retirement application."

### 2. Horn's DRI Claim

The parties' dispute over the correctness of the Committee's denial of Horn's claim for DRI benefits centers on whether the denial was a "fair reading" of the Retirement Plan and Description, so we do not address the other two factors, uniformity and unanticipated costs. *See Stone*, 570 F.3d at 258 n.4. Horn argues that he has met the eligibility requirements for the Retirement Plan as enunciated in the Description because he has more than ten years of service with Owens-Illinois and became permanently and totally disabled while he was an active employee, as evidenced by his receipt of Social Security Disability benefits. If the Description's DRI eligibility provision ended after the first sentence quoted above, this reading would have considerable merit. However, the Description's only expressed definition of being "permanently and totally disabled" for purposes of DRI eligibility is "if the insurance company approves [the employee's] claim for permanent and total disability under the

PTD provision . . . ." Any ambiguity lurking in this statement is expunged when it is read together with the Description's explanation of the claims process, which explicitly requires the employee to receive PTD benefits before submitting an application for DRI benefits. *Cf. Rhorer*, 181 F.3d at 641 ("[I]t is well settled that the summary plan description must be read as a whole." (citation omitted)). Therefore, Horn had to do more than be deemed permanently and totally disabled by the Social Security Administration to qualify as "permanently and totally disabled" for DRI benefits. According to the Description, Horn had to convert the Social Security Administration's determination into an award of PTD benefits, which he cannot do.

Horn contests this reading of the Description, citing this court's unpublished decision in *Parker v. Owens-Illinois, Inc.* for the proposition that he need not have been approved for PTD benefits to be eligible for DRI benefits. 275 F.3d 43, 2001 WL 1223704 (5th Cir. 2001) (table case). In *Parker*, we evaluated a nearly identical Summary Plan Description provision for DRI benefits, which stated:

> You are eligible for disability [retirement] income benefits if you have had ten or more years of credited service and become permanently and totally disabled. You will be considered permanently and totally disabled for purposes of this benefit if the insurance company approves your claim for permanent and total disability benefits.

*Id*. at *1 (alteration in original). The *Parker* court held that PTD benefits were not a prerequisite for DRI benefits, despite the language in the second sentence, because "the [Description] does not clearly explain that a DRI applicant can *only* establish permanent and total disability if the insurance company approves his PTD claim." *Id*. at *4 (emphasis in original).

*Parker*'s interpretation of the Description is inapplicable to this case. In *Parker*, the Description's claim provision stated that an employee "must first

*submit* a claim for permanent and total disability benefits" to file a claim for DRI benefits. *Id.* at *2 (emphasis added). In the Description under which Horn sought DRI benefits, an employee may file a claim for DRI benefits if his "claim for PTD . . . is *approved* by the group insurance company . . . ." (emphasis added). The distinction between the submission of a claim and the approval of a claim is essential when reading the Description's DRI provision as a whole because it clearly demonstrates that, in this case, an employee must receive PTD benefits before he may submit a claim for DRI benefits. Thus, PTD benefits are a necessary prerequisite to DRI benefits.

Horn also argues that the Committee's reading of the Retirement Plan is legally incorrect because he has qualified for DRI benefits under the terms of the CBA. According to Horn, the CBA recognizes that DRI benefits may be awarded based on a determination of disability by the Social Security Administration, without any reference to PTD benefits being awarded by the insurer. If anything, the CBA suggests just the opposite. The CBA states that, if an employee is "approved for Social Security disability, the Company will qualify the employee for P.T.D. In this case the retirement disability benefit . . . will be effective on the date the Social Security disability is determined to have commenced . . . ." The CBA further states that an employee "who had ten (10) or more years of credited service becomes permanently and totally disabled . . . may be retired on a monthly disability income figured as if he were age 65 on the date of such disability, and the disability date will be determined as defined in [the PTD provision of the CBA]." These provisions demonstrate that, as in the Description, the award of DRI benefits is pegged to a previous award of PTD benefits. As discussed above, Owens-Illinois has not qualified Horn for PTD benefits, and thus he cannot qualify for DRI benefits.

The Committee's conclusion that the Description and the Retirement Plan require an employee to receive PTD benefits to be eligible for DRI benefits is

legally correct. Accordingly, the Committee did not abuse its discretion in denying Horn's claim for DRI benefits.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.