Shirley A. PURNEY, Plaintiff,

v.

RELIASTAR LIFE INSURANCE COMPANY and The Meredith Corporation Voluntary Life Insurance Plan, Defendants.

The Meredith Corporation Voluntary Life Insurance Plan, Third–Party Plaintiff,

v.

Metropolitan Life Insurance Company, Third–Party Defendant.

The Meredith Corporation Voluntary Life Insurance Plan, Cross–Claimant,

v.

Reliastar Life Insurance Company, Cross–Defendant.

No. 2:09–CV–00122–PMP–RJ.

United States District Court, D. Nevada.

Jan. 31, 2010.

Steven J. Parsons, Law Office of Steven J. Parsons, Las Vegas, NV, for Plaintiff.

Leann Sanders, Shirley Blazich, Alverson, Taylor, Mortensen & Sanders, Las Vegas, NV, Ryan J. Burt, Mark J. Girouard, Halleland Lewis Nilan & Johnson, P.A., Minneapolis, MN, for Defendants, Cross–Defendant.

Kathleen M. Maynard, Brian K. Terry, Thorndal, Armstrong, Delk, Balkenbush, Eisinger, Las Vegas, NV, for Defendant, Third–Party Plaintiff,

Brian K. Terry, Thorndal Armstrong Delk, et al., Las Vegas, NV, for Cross–Claimant.

## ORDER

PHILIP M. PRO, District Judge.

Presently before the Court is Plaintiff Shirley Purney's Motion for Summary Judgment (Doc. # 45), filed on October 21, 2009, and Defendant Reliastar Life Insurance Company's Cross–Motion for Summary Judgment (Doc. # 60), filed on November 23, 2009. Defendant and Third–Party Plaintiff Meredith Corporation filed a Response to Plaintiff's Motion (Doc. # 59) on November 23, 2009, and an Opposition to Reliastar Life Insurance Company's Motion (Doc. # 61) on December 11, 2009. Defendant Reliastar Life Insurance Company filed a Reply (Doc. # 65) on December 21, 2009.

## I. BACKGROUND

Plaintiff Shirley A. Purney ("Mrs. Purney") is the widow of the late Tom Purney ("Mr. Purney"). (Def. Reliastar's Answer to Compl. ["Answer"] (Doc. # 5) at ¶ 1.) Mrs. Purney alleges she was and still is the beneficiary of benefits due her by reason of Mr. Purney's participation in the Group Life Plan ("the Plan") provided to him through his employer, Defendant Meredith Corporation ("Meredith"). (Notice of Removal (Doc. # 1), Ex. B ["Compl."] at ¶ 1.) Under the Plan, Meredith employees could elect supplemental life insurance coverage at their own expense in addition to the core and basic coverage paid for by Meredith. (Pl.'s Mot. Summ. J. (Doc. # 45) ["Pl.'s Mot."], Ex. 1.) Meredith con-

tracted with Metropolitan Life Insurance Company ("MetLife") to insure the Plan from January 1, 1995 to December 31, 2003. (*Id.* Ex. 25 at MC0097, Ex. 29 at 003.)

The MetLife Plan contained a "waiver of premium" provision. (*Id.,* Ex. 29 at 034.) Under the provision, when an employee became permanently disabled, MetLife would continue to provide supplemental coverage and the employee no longer had to pay the supplemental life insurance premiums. (*Id.*) One of the eligibility requirements for the waiver of premium was that the employee submit proof of his total disability within twelve months after the date the employee ceased to be actively at work. (*Id.* at 035.)

On June 4, 1985, Mr. Purney enrolled in supplemental life insurance coverage. (*Id.,* Ex. 1.) On or about May 12, 2000, Mr. Purney became permanently and totally disabled. (*Id.,* Ex. 4.) The Social Security Administration confirmed Mr. Purney's disability and began paying him disability benefits in November of 2000. (*Id.*) Mr. Purney also qualified for disability benefits under Meredith's Long–Term Disability ("LTD") benefits plan. (*Id.,* Exs. 3, 5.) Meredith required Mr. Purney provide it with proof of his disability on a monthly, and then yearly, basis to be eligible for Meredith's LTD benefits. (*Id.*) Because Mrs. Purney alleges he never was advised of the waiver of premium benefit, Mr. Purney never submitted a waiver of premium claim with Meredith or MetLife. (Compl. at ¶ 9.) Mr. Purney continued to pay supplemental life insurance premium every two weeks, which Meredith deducted from Mr. Purney's LTD benefits. (*Id.,* Exs. 6, 15.)

Beginning January 1, 2004, Defendant Reliastar Life Insurance Company ("Reli-astar") became the insurer of the Plan. (*Id.,* Ex. 25 at MC0097.) The Plan conferred control over, and ownership of the insurance records to Reliastar. (*Id.,* Ex. 25 at MC0100.) Under the Reliastar Plan, to be eligible for coverage, the employee must have been actively at work on the Plan's effective date of January 1, 2004. (*Id.* at MC0107.)

In a separate agreement between Meredith and Reliastar, Reliastar agreed to provide an exception to the eligibility requirements for Meredith's LTD employees. (*Id.,* Exs. 11, 24.) Reliastar asserts the agreement was to provide only basic and core insurance coverage to Meredith's LTD employees. (*Id.,* Ex. 23.) However, after Reliastar became the insurer, Meredith continued to deduct the supplemental life insurance premium from Mr. Purney's LTD benefits. (*Id.,* Exs. 6, 15.) Meredith's third-party administrator, ADP, paid Meredith employees' premiums to Reliastar in a lump sum amount. (*Id.,* Ex. 15.)

Never regaining employment because of his disability, Mr. Purney died on December 3, 2005. (Answer at ¶ 8.) Meredith sent Mrs. Purney a letter informing her of Mr. Purney's life insurance benefits due her in the amount of $255,000, and requesting Mrs. Purney fill out a claim. (Pl.'s Mot., Ex. 8.) Meredith forwarded the claim to Reliastar which included $102,000 for basic and core benefits, and $153,000 for supplemental benefits. (*Id.,* Ex. 9.) Reliastar paid Mrs. Purney benefits for basic and core life insurance benefits. (*Id.,* Ex. 13.) Reliastar denied Mrs. Purney's claim for supplemental life insurance coverage. (*Id.,* Ex. 19.) In its initial denial letter, Reliastar explained it was denying Mrs. Purney's claim because Mr. Purney's disability occurred prior to the effective date of Reliastar's coverage, and

Mr. Purney never filed a waiver of premium claim when he became disabled in 2000. *(Id.)*

Mrs. Purney appealed Reliastar's denial. *(Id.,* Ex. 22.) Reliastar again denied Mrs. Purney's claim. *(Id.,* Ex. 23.) In its second denial letter, Reliastar explained Mr. Purney was not eligible for coverage based on the express terms of the policy because he was required to be actively at work when the Plan became effective on January 1, 2004. *(Id.)* Additionally, Reliastar stated that while Mr. Purney was on the list of LTD employees excepted from Reliastar's eligibility requirements, the exception applied only to basic and core coverage. *(Id.)* Reliastar stated its decision was final. *(Id.)*

On December 24, 2008, Mrs. Purney filed an action in Nevada state court against Reliastar and Meredith. Mrs. Purney's Complaint alleges (1) violation of 29 U.S.C. § 1132(a)(1)(B) ("ERISA"); and (2) breach of the employee benefit plan. Reliastar removed the action to this Court. Mrs. Purney now moves for summary judgment against Meredith,[1] MetLife,[2] and Reliastar. Mrs. Purney argues Reliastar is obligated to pay Mrs. Purney supplemental benefits because it waived the Plan's eligibility requirements when it accepted Mr. Purney's supplemental premiums.

In response, Reliastar cross-moves for summary judgment against Mrs. Purney.

Reliastar contends Mrs. Purney is not eligible for supplemental coverage under the Plan's express language because Mr. Purney was not actively at work on the Plan's effective date. Reliastar argues that it only intended to except Meredith's LTD employees from the eligibility requirements for core and basic coverage. Additionally, Reliastar contends Mrs. Purney has not met her burden of showing that, by accepting Mr. Purney's premiums, Reliastar waived or otherwise excused Mr. Purney from the express eligibility requirements for supplemental coverage. Reliastar also argues the Court should not look outside the administrative record or allow for discovery, as the administrative record is complete. Mrs. Purney does not respond to Reliastar's cross-motion.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Initially, the moving party bears the burden of proving there is no genuine issue of material fact. *Leisek v. Brightwood Corp.,* 278 F.3d 895, 898 (9th Cir.2002). If the moving party meets its burden, the burden shifts to the nonmoving party to "set forth specific facts that show a genuine issue for trial." *Id.* (internal quotation omitted). A moving

1. Although her Motion states it is also against Meredith, Mrs. Purney does not make an argument as to Meredith's liability. Meredith responds by noting Mrs. Purney's motion does not specifically mention Meredith in such a manner that would indicate Mrs. Purney seeks to apply liability to Meredith. Because the Motion makes no arguments about Meredith, the Court will deny it without prejudice as to Defendant Meredith.

2. Mrs. Purney has moved to amend her Complaint to add MetLife as a Defendant and moves for summary judgment against MetLife. However, at the time Mrs. Purney filed her Motion, MetLife was not a party to the action. Accordingly, any arguments made as to MetLife's liability are premature.

party without the ultimate burden of persuasion at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.,* 210 F.3d 1099, 1102 (9th Cir.2000). The Court views all evidence in the light most favorable to the non-moving party. *Leisek,* 278 F.3d at 898.

### III. DISCUSSION

#### A. Standard of Review

██ The Court reviews a challenge to an ERISA plan's denial of benefits de novo " 'unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan[,]' " in which case abuse of discretion review applies. *Jebian v. Hewlett–Packard Co. Employee Benefits Org. Income Prot. Plan,* 349 F.3d 1098, 1102–03 (9th Cir.2003) (quoting *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). Reliastar admits that the Plan does not give it discretionary authority. Accordingly, the standard of review is de novo.

██ Under de novo review, the Court may consider evidence outside of the administrative record "only when circumstances clearly establish that additional evidence is necessary to conduct an adequate de novo review of the benefit decision." *Opeta v. N.W. Airlines Pension Plan for Contract Employees,* 484 F.3d 1211, 1217 (9th Cir.2007) (emphasis omitted). Examples of when such evidence may be necessary include:

claims that require consideration of complex medical questions or issues regarding the credibility of medical experts; the availability of very limited administrative review procedures with little or no evidentiary record; the necessity of evidence regarding interpretation of the terms of the plan rather than specific historical facts; instances where the payor and the administrator are the same entity and the court is concerned about impartiality; claims which would have been insurance contract claims prior to ERISA; and circumstances in which there is additional evidence that the claimant could not have presented in the administrative process.

*Id.* (quotation omitted): *see also Burke v. Pitney Bowes Inc. Long–Term Disability Plan,* 544 F.3d 1016, 1028 (9th Cir.2008) (holding procedural irregularities prevented full development of the administrative record when committee considered a new basis for termination of benefits on appeal that was not part of the plan's initial decision to terminate participant's benefits).

██ By providing a new basis for denial on appeal, Mrs. Purney was prevented from fully developing the administrative record. Specifically, Mrs. Purney was precluded from presenting evidence on Reliastar's agreement with Meredith as well as Reliastar's knowledge it accepted premiums to support waiver. Accordingly, the Court will consider evidence outside the administrative record.

#### B. Waiver

██ The parties do not dispute that Mr. Purney was ineligible for coverage under the Plan's express terms. However, Mrs. Purney argues Reliastar waived its right to deny coverage when it accepted premium payments from Meredith for

Mr. Purney's supplemental life insurance. Reliastar contends it did not know it was accepting supplemental premium payments for Mr. Purney because it received premium payments from Meredith's third-party administrator in lump sum amounts, with no information for which employees or coverage the payments were made. Additionally, Reliastar argues that even if it did know it was accepting supplemental premiums for Mr. Purney, Mrs. Purney has not met her burden to show Reliastar engaged in misconduct, a necessary requirement to effectuate waiver in the insurance context.

■■■ In adopting ERISA, Congress intended to create a comprehensive and nationally uniform set of rules and standards in the administration of employee benefit plans. *Menhorn v. Firestone Tire & Rubber Co.,* 738 F.2d 1496, 1498 (9th Cir.1984). To that end, ERISA generally supercedes all state laws that relate to an employee benefit plan. 29 U.S.C. § 1144(a). However, Congress recognized that ERISA's bare statutory provisions would be insufficient to establish a comprehensive regulatory scheme. *Menhorn,* 738 F.2d at 1499. Accordingly, it empowered federal courts to develop a body of nationally uniform federal common law consistent with ERISA's objectives. *Schikore v. BankAmerica Supplemental Retirement Plan,* 269 F.3d 956, 962 (9th Cir. 2001).

The United States Court of Appeals for the Ninth Circuit has yet to consider whether waiver applies in the ERISA context. Most circuit courts that have considered the issue have adopted waiver in ERISA cases. *See Lauder v. First Unum Life Ins. Co.,* 284 F.3d 375, 382 (2d Cir. 2002) (holding insurer waived its right to rely on lack of disability as a defense

when, upon becoming aware of the individual's disability, it failed to investigate or challenge it); *Rhorer v. Raytheon Eng'rs & Constructors, Inc.,* 181 F.3d 634, 645 (5th Cir.1999) (finding waiver available where insurer knew individual did not meet the eligibility requirements but nonetheless enrolled, accepted, and retained premiums from the individual); *see also Glass v. United of Omaha Life Ins. Co.,* 33 F.3d 1341, 1348 (11th Cir.1994) (leaving open the possibility that waiver may apply in the ERISA context but finding no waiver under the circumstances of the case); *Thomason v. Aetna Life Ins. Co.,* 9 F.3d 645, 648–49 (7th Cir.1993) (same); *Gaines v. Sargent Fletcher, Inc. Group Life Ins. Plan,* 329 F.Supp.2d 1198, 1222 (C.D.Cal. 2004) (holding insurer waived the right to require submission of a personal health statement when it enrolled and accepted premiums from plaintiff without giving any indication that plaintiff failed to comply with the precondition to obtaining coverage). However, the Fourth Circuit has held waiver does not apply under ERISA. *See White v. Provident Life & Acc. Ins. Co.,* 114 F.3d 26, 29 (4th Cir.1997) (finding the principles of estoppel and waiver are not available under ERISA); *see also Miller v. Coastal Corp.,* 978 F.2d 622, 624–25 (10th Cir.1992) (holding estoppel unavailable to modify an ERISA plan because it contradicts the ERISA requirement that all modifications be in writing).

The Ninth Circuit has recognized the similar equitable principle of estoppel in ERISA cases. *Alaska Trowel Trades Pension Fund v. Lopshire,* 103 F.3d 881, 884 (9th Cir.1996) (holding equitable estoppel available in ERISA action to recover trust fund contributions); *Pisciotta v. Teledyne Indus., Inc.,* 91 F.3d 1326, 1331 (9th Cir.1996) (recognizing the availability of equitable estoppel in the context of

ERISA, but finding estoppel unavailable because the terms of the plan were unambiguous).[3] Thus, the Court concludes the Ninth Circuit would join the Second and Fifth Circuits in adopting the principle of waiver in the ERISA context as well.

■■■ "Waiver is the voluntary or intentional relinquishment of a known right." *Rhorer,* 181 F.3d at 645 (quotation omitted). Although some courts have conflated the two, waiver is a distinct claim from equitable estoppel. *Pitts By & Through Pitts v. Amer. Sec. Life Ins. Co.,* 931 F.2d 351, 357 (5th Cir.1991). "Strictly defined, waiver describes the act, or the consequences of the act, of one party only, while estoppel exists when the conduct of one party has induced the other party to take a position that would result in harm if the first party's act were repudiated." *Id.* (emphasis omitted). Although the requisites to finding a valid waiver are not as well established as those of estoppel, generally the waiving party must have received some benefit or "consideration." *See Thomason,* 9 F.3d at 646, 648–49 (unwilling to find waiver where the insurance company misrepresented to the individual that his life insurance policy would be extended at no cost to him because the individual did not pay any consideration for the waiver); *Gaines,* 329 F.Supp.2d at 1222 (holding waiver did not expand the scope of the coverage it merely provided plaintiff with an available benefit for which he paid). The claimant bears the burden of proving waiver. *See Thomason,* 9 F.3d at 648–49 (noting that plaintiff concedes she cannot establish she provided consideration for the alleged waiver); *Glass,* 33

F.3d at 1348 (noting plaintiff provided insufficient evidence that defendant insurance company intentionally relinquished a known right).

Reliastar relies on this Court's holding in *Prime Insurance Syndicate, Incorporated v. Damaso* to argue misconduct is a necessary requirement to effectuate waiver in the insurance context, and Mrs. Purney has not alleged Reliastar engaged in misconduct. 471 F.Supp.2d 1087, 1098–99 (D.Nev.2007). However, this Court's holding in *Damaso* is inapplicable here as *Damaso* was not an ERISA case, and the holding in *Damaso* was based on this Court's interpretation of Nevada law, not federal common law. Those federal courts that have adopted waiver as part of the federal common law of ERISA have not required a showing of insurer misconduct.

For example, in *Rhorer,* the insurance company denied plaintiff's claim to recover the optional life insurance benefits her deceased husband elected under the plan on the ground that her husband had not satisfied the policy's requirement that he be actively at work. 181 F.3d at 637. On appeal from a grant of summary judgment in the insurance company's favor, the court found the plaintiff had presented sufficient evidence that the insurance company knew her husband had stopped working from his office because of his illness. *Id.* at 645. Nonetheless, the insurance company allowed plaintiff's husband to enroll in optional life insurance and accepted and retained his premiums for over a year. *Id.* Based on the evidence, the court held a reasonable jury could conclude that the insurance company knowingly waived its

---

**3.** Though not specifically argued, to the extent Mrs. Purney is asserting a claim of estoppel, that remedy is unavailable. Mrs. Purney has not shown that she detrimentally relied on a

misrepresentation made by Reliastar, and there is no dispute that the plan terms are unambiguous. *See Pisciotta,* 91 F.3d at 1331.

right to enforce the actively at work requirement. *Id.*

The Court will deny Reliastar's Motion for Summary Judgment. Viewing the facts in the light most favorable to Mrs. Purney, a reasonable jury could find Reliastar knew it was accepting supplemental premiums for Mr. Purney. Meredith's former Corporate Director of Benefits. Laurie Stilwell, states in an affidavit that Meredith provided Reliastar with an annual report listing all employees covered by the life insurance benefit plan and the amount for which they were covered.[4] Thus, Mrs. Purney has presented evidence that Reliastar knew Mr. Purney was covered for supplemental life insurance, and that it accepted and retained premiums for nearly two years. Accordingly, Reliastar's Motion for Summary Judgment is denied.

The Court will also deny Mrs. Purney's Motion for Summary Judgment. Viewing the facts in the light most favorable to Reliastar, a reasonable jury could find Reliastar did not know it was accepting supplemental premiums for Mr. Purney. A document created at the time Reliastar contracted with Meredith lists Meredith's LTD employees and the amount of life insurance coverage for each. Mr. Purney is listed as having $100,000 in life insurance benefits, which would be approximately the amount for basic and core insurance only. Additionally, the record indicates that Reliastar received Meredith's premium payments from a third-party administrator in a lump sum with no information regarding for which employees and coverages the premiums were paid. A genuine issue of material fact therefore remains as to whether Reliastar knew it was accepting premium payments from Mr. Purney for supplemental life insurance coverage. Therefore, Mrs. Purney's Motion for Summary Judgment is denied.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Reliastar's Motion for Summary Judgment (Doc. # 60) is hereby DENIED.

IT IS FURTHER ORDERED that Purney's Motion for Summary Judgment (Doc. # 45) is hereby DENIED.

---

4. Although Reliastar urges the Court to consider the Administrative Exception Agreement as conclusive evidence Mr. Purney was not covered for supplemental coverage, the Agreement was created after Mr. Purney died and there is no evidence Meredith signed it.