Neil BERGT, Plaintiff,

v.

**THE RETIREMENT PLAN FOR PILOTS EMPLOYED BY MARKAIR, INC., and the Administrative Committee for the Retirement Plan for Pilots Employed by MarkAir, Inc., Defendants.**

No. A98–407 CV (JWS).

United States District Court,
D. Alaska.

Oct. 14, 1999.

## ORDER FROM CHAMBERS

[Re: Motions for Summary Judgment— Dockets 17 and 18; Discovery Motions—Dockets 15 and 37]

SEDWICK, District Judge.

### I. MOTIONS PRESENTED

At docket 17, defendant The Retirement Plan for Pilots Employed by MarkAir, Inc. ("Plan") moves for summary judgment. The motion is opposed by plaintiff Neil Bergt ("Bergt"). At docket 18, Bergt cross-moves for summary judgment. The Plan opposes Bergt's motion. Oral argument has not been requested, and it would not be of material assistance to the court.

At docket 15, Bergt moves to compel discovery. At docket 37 Bergt moves to extend discovery.

### II. BACKGROUND

This is an action for retirement benefits under the Employment Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.* ("ERISA" or "Act"). Jurisdiction is based on 29 U.S.C. § 1132 and 28 U.S.C. § 1331. Bergt worked for Interior Airways, Inc. which later changed its name to Alaska International Air, Inc. and still later became MarkAir, Inc. For convenience's sake, the parties have, and the court will, refer to all three entities as simply "the Company." Bergt served as President and Chairman of the Board of Directors of the Company from 1975 until 1995. The Company created a profit-sharing plan on January 1, 1976. Bergt was eligible to participate and did participate in the profit-sharing plan. The Company was not obligated to contribute to the profit-sharing plan. On January 1, 1980, the Company created a retirement plan for pilots and former pilots. The retirement plan is governed by ERISA. Only pilots and former pilots were eligible participants in the retirement plan. The retirement plan excluded eligible participants who participated in any other qualified retirement plan to which the Company was contractually obligated to contribute.[1] A summary plan description issued at the same time excluded employees from participating in the retirement plan if they participated in any other Company-sponsored plan regardless of whether the Company was contractually obligated to contribute or not.[2] In October 1984, the Company adopted an Employee Stock Ownership Plan ("ESOP"). Bergt was eligible to participate and did participate in the ESOP. The Company was not obligated to contribute to the ESOP.

Bergt filed a claim for benefits under the retirement plan on March 22, 1996. On June 9, 1997, the Administrative Committee for the Retirement Plan for Pilots Employed by MarkAir, Inc. ("Committee") was formed to oversee administration of the retirement plan. The Committee rejected Bergt's application for benefits on April 28, 1998.[3] The Committee advised Bergt that because he participated in both the profit sharing plan and the ESOP, he was not an eligible participant in the retirement plan. The Committee also advised Bergt that there was no proof that he had ever been a pilot or former pilot. Bergt appealed the Committee's decision on June 30, 1998, pursuant to provisions in the retirement plan. Bergt submitted additional evidence that he did, in fact, qualify as a pilot or former pilot for purposes of the Plan. The Committee issued a memo-

---

1. The specific terms are set forth further below in this order.

2. The summary plan description's terms are discussed further below in this order.

3. Docket 17, exh. 16.

randum decision on October 28, 1998.[4] The Committee denied Bergt's appeal. The Committee determined that the retirement plan excluded employees who participated in any other Company-sponsored plan. The Committee therefore concluded Bergt did not qualify as an eligible participant because he participated in the Company's profit-sharing plan and its ESOP.

Bergt filed suit. Bergt and the Plan have both filed motions for summary judgment. Bergt's principal contention is that because the Company was not contractually obligated to contribute to the profit sharing plan or to the ESOP, the exclusion relied upon by the Plan is simply not applicable. The Plan acknowledges that the Company had discretion in deciding whether or not to contribute to the profit sharing plan or the ESOP. However, the Plan argues that the retirement plan is ambiguous, and when construed with relevant extrinsic evidence, does not afford Bergt the status of an eligible participant. Other facts are noted below.

### III. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if there is no genuine dispute as to material facts and if the moving party is entitled to judgment as a matter of law. The moving party has the burden of showing that there is no genuine dispute as to material fact.[5] The

moving party need not present evidence; it need only point out the lack of any genuine dispute as to material fact.[6] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[7] All evidence presented by the nonmovant must be believed for purposes of summary judgment and all justifiable inferences must be drawn in favor of the nonmovant.[8] However, the nonmoving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a factfinder to resolve the parties' differing versions of the truth at trial.[9]

### IV. DISCUSSION

#### A. Standard of Review of the Committee's Decision

If a retirement plan gives the plan's administrator discretion to interpret its terms and determine eligibility, corresponding eligibility decisions are reviewed for an abuse of discretion.[10] Such eligibility determinations will be upheld by the court if the determination "is based on a reasonable interpretation of the plan's terms and was made in good faith." [11] The court resolves any ambiguities in the plan's language in favor of the administrator's interpretation so long as that interpretation is reasonable.[12] However, the court reviews de novo whether a plan is ambiguous.[13] An ambiguity exists when the dis-

4. Docket 17, exh. 40.

5. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

6. *Id.* at 323–325, 106 S.Ct. 2548.

7. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

8. *Id.* at 255, 106 S.Ct. 2505.

9. *Id.* at 248–49, 106 S.Ct. 2505.

10. *See Atwood v. Newmont Gold Co., Inc.*, 45 F.3d 1317, 1321 (9th Cir.1995).

11. *Estate of Shockley v. Alyeska Pipeline Serv. Co.*, 130 F.3d 403, 405 (9th Cir.1997) (*quoting MacDonald v. Pan American World Airways, Inc.*, 859 F.2d 742, 744 (9th Cir.1988)).

12. *Johnson v. Dist. 2 Marine Eng. Beneficial Ass'n—Associated Maritime Officers Medical Plan*, 857 F.2d 514, 516 (9th Cir.1988).

13. *Patterson v. Hughes Aircraft Co.*, 11 F.3d 948, 950 (9th Cir.1993).

puted provision is susceptible to two or more reasonable interpretations.[14] If the plan administrator's interpretation is inconsistent with the plain meaning of the plan, then the interpretation is arbitrary and capricious.[15] Here, there is no dispute that Section 11.02 vests discretion in the retirement plan's Committee to interpret the plan's terms and determine eligibility.[16] Bergt argues that the Committee's decision is not entitled to an arbitrary and capricious standard of review if this court determines that the retirement plan is not ambiguous.[17] However, Bergt cites no support for this contention. The Committee's decision will be reviewed under the arbitrary and capricious standard of review.

### B. *Whether Bergt was an Eligible Participant*

Section 3.03 of the retirement plan provides, in relevant part:

PARTICIPATION AND ELIGIBILITY FOR BENEFITS

■ Notwithstanding the foregoing, *all Employees who are participants in any other pension, profit sharing, or retirement plan which is "qualified" by the Internal Revenue Service and to which the Company is contractually obligated to contribute may not participate under this Plan.* If, at any future date, the Company is required to make contributions to any such plan for a Participant, then, for the purpose of this Plan only, such Participant shall, from the date such contributions are made by the Company to any other such plan, not

be entitled to accrue further benefits, but shall have such employment with the Company count as service for purpose of vesting Accrued Benefits credited as of the time such Participant is no longer eligible. Furthermore, if the provisions of such other pension, profit sharing, or retirement plan allow an employee to earn Credited Service and accrue benefits during any period which such employee was a Participant in this Plan, the Accrued Benefits earned under this Plan shall be offset by the benefits payable under such other plan for the same period. If such employee again becomes eligible, he shall commence to accrue additional benefits as of the date he becomes eligible.[18]

The initial issue is whether the phrase "to which the Company is contractually obligated to contribute" is ambiguous or not.

■ Bergt argues that the phrase is unambiguous and only restricts eligibility if one participates in a plan to which the Company was contractually obligated to contribute. Bergt further contends that the court must restrict its analysis to the retirement plan's terms, and may not examine any other extrinsic evidence such as the summary plan description. The Plan argues that the phrase "to which the Company is contractually obligated to contribute" is ambiguous because its does not specify the basis or bases of the contractual obligation; that is, whether by collective bargaining agreement or a plan subject to the Internal Revenue Code. Additionally, the Plan contends that the phrase is am-

14. *See, e.g., Wilson v. Prudential Ins. Co. of America,* 97 F.3d 1010, 1013 (8th Cir.1996).

15. Stephen R. Bruce, *Pension Claims: Rights and Obligations* at 331 (2d ed. 1993) ("*Bruce*").

16. Docket 17, exh. 1, Retirement Plan, § 11.02 at 38–39.

17. Bergt's Opposition, docket 22 at 2.

18. Plan, § 3.03 (submitted as exh. 1 to The Plan's motion for summary judgment at docket 17) (emphasis added).

biguous because it could refer to obligations to contribute over the life of a plan, but not annually. These arguments are unpersuasive. ERISA plans are interpreted in their ordinary and popular sense; they are interpreted the way people of average intelligence and experience would interpret them.[19]

The Plan also argues that the phrase "contractually obligated" is ambiguous because it can be read to modify only "retirement plan," and not pension or profit sharing plans, or it can be read to modify all three.[20] The operative sentence is written in the disjunctive. It states, "all Employees who are participants in any other pension, profit sharing, or retirement plan which is 'qualified' by the Internal Revenue Service and to which the Company is contractually obligated to contribute may not participate under this Plan." Committee members were uncertain whether "contractually obligated" modified only retirement plans or modified pension, profit sharing, and retirement plans.[21] When Bergt's appeal was denied, the Plan relied in part on this alternate basis to find an ambiguity.[22] The court has considered this argument, and finds it unpersuasive, too. The problem with this construction is that neither pension nor profit sharing are followed by the word "plan." Thus, the word "plan" following "retirement" reaches back to the words "pension" and "profit sharing," making the qualifying phrase "plan which ..." applicable to all three.

The provision in question is not ambiguous. Bergt argues that this ends the analysis. According to Bergt, the court must restrict its analysis to the terms of the plan alone, without considering the summary plan description or any other form of extrinsic evidence. Bergt emphasizes that because the Committee's interpretation of the retirement plan conflicts with the plan's unambiguous language, the Committee's interpretation is necessarily arbitrary and capricious and must be reversed. The Plan contends that the court can, indeed must, construe the retirement plan with reference to the summary plan description and other relevant extrinsic evidence. The next issue, therefore, is whether federal common law applies a "four corner" analysis when interpreting retirement plans governed by ERISA. This deceptively simple issue resists an easy answer and is explored in the following section.

**C.** *Whether Extrinsic Evidence May Be Examined to Interpret the Plan*

The Circuits are split on whether courts may resort to extrinsic evidence when interpreting the terms of an ERISA plan or whether courts must first restrict their analysis to the four corners of the plan, itself, before examining relevant extrinsic evidence.[23] As one leading treatise notes, "[t]he particular interpretive principles adopted by a court may ... affect the extent to which extrinsic evidence may be resorted to in construing plan language and the types of extrinsic evidence that are appropriate."[24]

The Plan contends that under *Spink v. Lockheed Corp.*,[25] the retirement

---

19. *Vizcaino v. Microsoft Corp.*, 97 F.3d 1187, 1194 (9th Cir.1996).

20. Plan's opposition, docket 24 at 32–33.

21. *See, e.g.,* the Plan's opposition, docket 24 at 31–33.

22. Docket 17, exh. 40 at 8–9.

23. James F. Jorden, Waldemar J. Pflepsen, Jr., and Stephen H. Goldberg, *ERISA Litigation,* § 4.04[C] at 4–34—4–35, n. 193 (2d ed. 1997) (*"Jorden "*) (citing conflicting cases).

24. *Jorden, supra,* § 4.04[C] at 4–34—4–35.

25. 125 F.3d 1257 (9th Cir.1997).

plan must be construed and interpreted together with the summary plan description. In *Spink*, one section of a plan excluded employees from participation if the employee began employment on or after December 25, 1976, and was over 60 years of age when he or she began employment. However, another section of the plan required the administrator to send annual statements to employees describing their respective credited service. This second section provided that the annual statements were deemed "correct and final" under the plan's terms.[26] Under these circumstances, the Ninth Circuit concluded that the plan in question was ambiguous as applied to Spink because there was room for reasonable disagreement over what the plan meant when it "interacted" with the annual statements which were "correct and final." *Spink* does not stand directly for the proposition advanced by the Plan in this case; that the court must interpret the retirement plan by reference to the summary plan description, but it does suggest that it is appropriate to consider "official" information about plans distributed to participants when deciding whether a plan is ambiguous.

There is another Ninth Circuit opinion which may be read to support the Plan's argument. In *Nelson v. EG & G Energy Measurements Group, Inc.*,[27] Chief Judge Hug noted "we interpret the terms of the Plan de novo by looking at the terms of the Plan, the summary statement given to the employees, and other manifestations of the parties' intent."[28] The court did not restrict its analysis to the terms of the

plan, itself. This appears consistent with what may be the developing trend of recent authority. One treatise notes, "even when a plan provision appears unambiguous, extrinsic evidence is generally allowed to show a different meaning of the parties. Indeed, some courts recognize the SPD [summary plan description] as a plan document in interpretation so that an *ambiguous* plan provision is not required to be found before the SPD may be considered."[29]

Bergt argues that courts in the Ninth Circuit must restrict their analyses to the terms of the plan without reference to any extrinsic evidence. For example, in *Vizcaino v. Microsoft Corp.*,[30] the Ninth Circuit observed, "[w]hen a plan is ambiguous on its face, we may, and typically do, consider extrinsic evidence to interpret it."[31] This suggests, without expressly holding, that the court should consider extrinsic evidence only if it first finds that the retirement plan is ambiguous on its face. In *Richardson v. Pension Plan of Bethlehem Steel Corp.*,[32] the Ninth Circuit cited with approval Sixth Circuit precedent holding that courts should first attempt to determine the intent of the parties by reference to the agreement before resorting to any other evidence of intent.[33] In the Sixth Circuit, extrinsic evidence is not admissible unless an ambiguity exists on the face of the agreement.[34] *Richardson* and *Vizcaino* may be read to support Bergt's arguments.

Although both Bergt and the Plan raise colorable arguments, this court is persuad-

---

**26.** *Id.* at 1262.

**27.** 37 F.3d 1384 (9th Cir.1994).

**28.** *Id.* at 1389.

**29.** *Bruce, supra,* at 353 (emphasis in original).

**30.** 97 F.3d 1187 (9th Cir.1996).

**31.** *Id.* at 1194.

**32.** 67 F.3d 1462 (9th Cir.1995).

**33.** *Id.* at 1466.

**34.** *Schachner v. Blue Cross and Blue Shield of Ohio,* 77 F.3d 889, 893 (6th Cir.1996).

ed that the Plan's position is more persuasive for four reasons. First, although *Richardson* and *Vizcaino* certainly offer Bergt support, neither case necessarily conflicts with Chief Judge Hug's analysis in *Nelson, supra*. *Vizcaino* does not hold that extrinsic evidence may *not* be used even if a contract is unambiguous on its face. It simply states a compatible rule permitting courts to interpret retirement plans by reference to extrinsic evidence when the plans *are* ambiguous. This court does not believe that too much should be read into *Richardson*'s citation of Sixth Circuit authority in the absence of any corresponding discussion or analysis.

Second, and most importantly, it makes good sense as a question of law and policy to interpret retirement plans in light of summary plan descriptions, because such descriptions are integral to the administration of retirement plans. The summary plan descriptions are issued to plan participants, must be written in simple and plain terms, and must accurately describe the retirement plan's provisions. Moreover, the summary plan descriptions are ordinarily the only written description of benefits read by participants, for the plan itself is ordinarily long and technical.[35]

■ Third, under traditional principles of contract interpretation, the parole evidence rule "does not apply at all when a statement, writing, or practice is made, or reiterated, *subsequent* to the adoption of the written document."[36] This same principle applies to interpretation of ERISA plans.[37] The extrinsic evidence that the Committee examined in this case was all

developed subsequent to the retirement plan.

Finally, if this court applied a more rigorous *de novo* standard of review, it would "interpret the terms of the Plan ... by looking at the terms of the Plan, the summary statement given to the employees, and other manifestations of the parties' intent."[38] If this court could use the summary plan description and other manifestations of the parties' intent to interpret the retirement plan under a *de novo* standard of review, it makes little sense to be denied such extrinsic evidence under a more deferential arbitrary and capricious standard of review.

Therefore, this court concludes that the retirement plan should be interpreted with reference to the summary plan description.

## D. *Whether the Committee's Interpretation of the Plan was Reasonable*

■ The Committee's final decision issued on October 28, 1998, reviews and summarizes the relevant extrinsic evidence it relied upon in interpreting the retirement plan's terms.[39] The Committee examined the summary plan description which was issued with the retirement plan.[40] ERISA obligates plan administrators to issue a summary plan description which accurately explains the terms of a retirement plan in simple and easy to understand language.[41] The summary plan description which was issued in this case provides:

PLAN MEMBERSHIP
You are a member of this plan if—

35. *See, e.g., Bruce, supra,* at 354–61 (discussing summary plan descriptions).

36. *Bruce, supra,* at 354.

37. *Id.*

38. *Nelson,* 37 F.3d at 1389.

39. Docket 17, exh. 40 at 7–10.

40. Docket 17, exh. 40 at 8.

41. *See, e.g., Bruce, supra,* at 354–58 (discussing requirements).

1. You are an active employee of Alaska International Air, Inc. and are currently working as a qualified Captain, Reserve Captain, First Officer, Flight Engineer, Check Pilot, or Check Flight Engineer

or

2. You have previously held a position shown above but you are now working for the Company in another capacity.

However, if you were hired after January 1, 1980 and you were age 60 or over on that date, you cannot become a member of this plan.

Also, *if you are a member of another Company-sponsored retirement or profit-sharing plan, you cannot be a member of this plan.*[42]

Thus, the summary plan description precludes otherwise eligible employees from participation if they are participants in any other Company-sponsored plan, regardless of whether the Company is contractually obligated to contribute. When construed with the retirement plan, the summary plan description creates an ambiguity regarding eligibility. The documents could be interpreted as denying employees the right to participate if they were a member of any other Company-sponsored plan or the documents could be interpreted as denying employees the right to participate only if they were a member of another Company-sponsored plan to which the Company was contractually obligated to contribute. Faced with this ambiguity, the Committee examined additional extrinsic evidence to resolve the issue. Bergt was never listed as a participant on the retirement plan's rolls.[43] He was never treated as a plan participant by the Company, the Committee, or the plan's actuary.[44] Bergt's omission from the retirement plan's rolls is even more significant when one considers that he served as President and Chairman of the Board for a number of years.[45] In 1980, another similarly-situated employee, Carol Jeffus, executed a document revoking her participation in the profit sharing plan when she elected to participate in the retirement plan.[46] Jeffus advised the Committee that she had been told she could participate in the retirement plan or another plan, but not both.[47] All other similarly-situated employees, except Bergt's brother, Ron Bergt, stopped participating in the Company's profit sharing plan in 1980 and began participating in the retirement plan.[48] No Company employee was a participant in both the retirement plan and the ESOP or profit-sharing plan between 1980 and 1995.[49] The Company's former human resources director, Kathy Conner, administered the retirement plan. Conner advised the Committee that to the best of her memory no employee could participate in both the retirement plan and the ESOP or profit-sharing plan.[50] Conner also advised the Committee that Bergt knew he was not in the plan by statements that he had made.[51]

**42.** *See* Summary Plan Description for the Retirement Plan (submitted as exh. 2 to the Plan's motion for summary judgment at docket 17) (emphasis added).

**43.** Docket 17, exh. 40 at 5, 9.

**44.** *Id.*

**45.** Docket 17, exh. 40 at 8.

**46.** Docket 17, exh. 40 at 4, 7–8.

**47.** Docket 17, exh. 40 at 8.

**48.** Docket 17, exh. 40 at 4.

**49.** Docket 17, exh. 40 at 8.

**50.** *See* Declaration of Garrett Wong, ¶ 78 at 26–27 (submitted with the Plan's motion for summary judgment at docket 17).

**51.** *Id.*

■ Based on all of the preceding evidence, the Committee interpreted the retirement plan as excluding an employee from participating in the retirement plan if the employee participated in the profit sharing plan or the ESOP. There is no genuine issue of material fact in dispute. The Committee's interpretation of the retirement plan's terms is reasonable and the Committee acted in good faith in determining Bergt's eligibility.[52] Furthermore, the process was fair and reasonable. The Committee gave Bergt ample opportunity to submit evidence and argument. The Committee issued its decision denying Bergt's eligibility on April 28, 1998.[53] Bergt appealed. The Committee thoroughly considered Bergt's arguments and issued a decision on October 28, 1998.[54]

■ Bergt raises two final arguments which should be addressed. First, Bergt argues that the Committee's deliberations were tainted by a conflict of interest. One of the Committee members was a participant in the retirement plan. Therefore, Bergt contends, this Committee member had an interest in denying Bergt's claim for benefits so that available proceeds under the plan would be greater. If a conflict of interest is established, the administrator's decision is reviewed *de novo*.[55] The court has considered Bergt's arguments and is not persuaded on the present record that any impermissible conflict of interest tainted the Committee's deliberations. Something more than a simple conflict must be present before a higher standard of review will be used; Bergt has the burden of producing evidence tending to show that the fiduciary's self-interest caused a breach of the fiduciary's obligation to the beneficiary.[56] As the Ninth Circuit noted in one case, "the presence of a conflict does not automatically remove the deference we ordinarily accord to ERISA administrators who are authorized by the plan to interpret a plan's provisions."[57] Here, there were three Committee members. Beyond generalized allegations, Bergt has produced no evidence to establish that a serious conflict tainted the Committee's deliberations. However, even if a heightened *de novo* standard of review existed, this court would reach the same conclusion as the Committee did principally for the same reasons. Construing "the terms of the [p]lan, the summary statement given to the employees, and other manifestations of the parties' intent,"[58] it seems clear to this court that the retirement plan was intended to exclude employees from participating if they participated in any other Company-sponsored plan regardless of whether or not the Company was contractually obligated to contribute to the other plan.

■ Second, Bergt argues that under the rule of *contra proferentem*, all provisions should be construed against the

52. The Plan also argues that additional evidence may be found in Bergt's marriage dissolution proceedings which were reduced to a final judgment in 1993. Bergt did not list the retirement plan as community property assets. Bergt *did* list his ESOP and profit sharing plan accounts as community property assets. However, it does not appear that the Committee relied upon this extrinsic evidence in reaching its determination. This court should not consider evidence which the Committee did not rely upon. *See, e.g., Snow v. Standard Ins. Co.*, 87 F.3d 327, 332 (9th Cir. 1996).

53. Docket 17, exh. 16.

54. Docket 17, exh. 40.

55. *Atwood v. Newmont Gold Co.*, 45 F.3d 1317, 1322 (9th Cir.1995).

56. *Id.*

57. *Lang v. Long–Term Disability Plan of Sponsor Applied Remote Tech., Inc.*, 125 F.3d 794, 797 (9th Cir.1997).

58. *Nelson, supra*, 37 F.3d at 1389.

drafter. This rule, however, does not otherwise affect principles of contract interpretation. The rule is applied if resort to relevant extrinsic evidence does not resolve existing ambiguities.[59] Here, as noted, this court has concluded that by reference to relevant extrinsic evidence, the Committee reached a reasonable interpretation of the retirement plan which resolved any ambiguity affecting the plan's terms. Therefore, there is no need to resort to the rule of *contra proferentem.*[60]

### V. CONCLUSION

The court has considered, but finds it unnecessary to discuss the multiple other arguments raised by both parties. For the foregoing reasons, the Plan's motion for summary judgment at docket 17 is GRANTED and Bergt's motion for summary judgment at docket 18 is DENIED.

Bergt has not opposed the Plan's motion for summary judgment on the grounds that additional discovery is needed. No Rule 56(f) motion has been filed. Indeed, Bergt has filed his own motion for summary judgment. Under these circumstances, and in light of the disposition of the motions for summary judgment, the discovery motions at dockets 15 and 37 are DENIED as moot.

---

**59.** *Vizcaino, supra,* 97 F.3d at 1194.

**60.** In the specific context of this case, additional complexities are posed by the rule of *contra proferentem.* Bergt was the Company's President and Chairman of the Board of Directors. The parties appear to acknowledge that Bergt had significant if not controlling input into all Company plans. It could perhaps be argued that if the rule applies, it should result in terms being construed against Bergt. However, neither party has adequately briefed the factual or legal grounds of this issue, and it is not necessary to address it in light of this order.